UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DARREN POLLOCK,                                    Case No. 2:21-cv-01280-AA

      Petitioner,                                 OPINION AND ORDER

  v.

BRAD CAIN,

      Respondent.
_____

AIKEN, District Judge.

    Petitioner brings this federal habeas action pursuant to 28 U.S.C. § 2254 and challenges his state court convictions for sodomy on grounds that his counsel provided ineffective assistance at trial. Petitioner's claims were rejected by the Oregon state courts in decisions that are entitled to deference, and federal habeas relief is denied.

BACKGROUND

    In September of 2009, a jury found Petitioner guilty of six counts of Sodomy in the First Degree. Resp't Ex. 101. Petitioner's convictions arose from the abuse of RC, the three-year old

Page 1   - OPINION AND ORDER

daughter of Petitioner's neighbor. The evidence presented at trial established the following facts, as recounted by the Oregon Court of Appeals:

> In the summer of 2007, [Petitioner] was living with his then-girlfriend. He stayed home during the day with his daughter and stepdaughter, and also babysat the neighbor's three-year-old daughter, the victim in this case.
>
> The victim and her mother moved to a different neighborhood in August 2007…. In April 2008, [Petitioner's] then-former girlfriend visited the victim's mother. The two women arranged a play date for their daughters. After [Petitioner's] former girlfriend left, and while riding in the back seat of the family car, the victim asked her mother where [Petitioner] was. The victim's mother told the victim that she probably would never see [Petitioner] again. At that point, the victim told her mother that [Petitioner] "used to let me put where he goes pee and poop in my mouth." The victim told her mother that that occurred "every day when you went to work * * * in [Petitioner's] room where I took a nap."
>
> The victim's mother contacted the police. A detective arranged for the victim to be interviewed by Kids First Center of Lane County, an organization that interviews and counsels child victims of abuse….The victim gave a statement describing [Petitioner's] acts of sodomy, describing how he would put his penis in her mouth and "pee" on her face. Kids First Center made a DVD of the interview.
>
> At trial, the state called the victim, who was then five years old, as its first witness, but did not ask her specifically about the alleged abuse. The state did, however, ask the victim on direct examination if she remembered the statements that she had made in the DVD and whether they were true, and the victim responded affirmatively to both questions. Defense counsel then questioned the victim briefly, including asking her whether she remembered saying the things on the DVD and whether she had also talked to her mother and a detective about those things, and the victim answered affirmatively….The state then called the Kids First interviewer and offered the DVD of the interview into evidence. At the close of the state's case-in-chief, the prosecutor played the video for the jury.

*State v. Pollock*, 251 Or. App. 755, 756-57 (2012), *rev. denied*, 353 Or. 280 (2013). Based on this evidence, the jury found Petitioner guilty as charged and the trial court imposed concurrent sentences totaling 300 months of imprisonment. Resp't Ex. 101.

After an unsuccessful direct appeal, Petitioner sought post-conviction relief (PCR) in state court and claimed that his trial counsel provided ineffective assistance in numerous respects. Resp't Exs. 103-08, 116. The PCR court denied relief, the Oregon Court of Appeals affirmed, and

Page 2    - OPINION AND ORDER

the Oregon Supreme Court denied review. Resp't Exs. 145-55; *Pollock v. Cain*, 307 Or. App. 613 (2020) (per curiam), *rev. denied*, 368 Or. 511 (2021).

On August 27, 2021, Petitioner sought federal habeas relief in this action.

## DISCUSSION

In his Amended Petition, Petitioner asserts two claims for relief: Claim a, with six subparts, and Claim b. *See* Am. Pet. at 3-4 (ECF No. 11). In his supporting brief, however, Petitioner presents no argument to support Claim a, subparts one, two, and six, or to support Claim b. *See generally* Pet'r Brief in Support (ECF No. 35). Upon review of the record, I find that Petitioner fails to sustain his burden to prove entitlement to habeas relief on these claims. *See Mayes v. Premo*, 766 F.3d 949, 957 (9th Cir. 2014) (stating that a habeas petitioner bears the burden of proving the alleged claims); *Davis v. Woodford*, 384 F.3d 628, 637-38 (9th Cir. 2004) (accord).

In the remaining subparts of Claim a, Petitioner contends that trial counsel provided ineffective assistance by stipulating to the admission of a medical report, failing to object to a detective's rebuttal testimony, and failing to impeach RC with evidence that family members coached her testimony. Respondent contends that Petitioner is not entitled to habeas relief because the Oregon courts reasonably rejected his claims.

A federal court may not grant habeas relief regarding any claim "adjudicated on the merits" in state court, unless the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" established federal law if it fails to apply the correct Supreme Court authority or reaches a different result in a case "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly established federal law

if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam); *see Penry v. Johnson*, 532 U.S. 782, 793 (2001) ("even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable"). To meet this deferential standard, a petitioner must demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Under the well-established precedent of *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner alleging the ineffective assistance of counsel must show that 1) "counsel's performance was deficient" and 2) counsel's "deficient performance prejudiced the defense." *Id.* at 687. To establish deficient performance, the petitioner "must show that counsel's representations fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Unless the petitioner "makes both showings, it cannot be said that the conviction...resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Judicial review of an attorney's performance under *Strickland* is "highly deferential" and carries a "strong presumption" that counsel's performance fell within a "wide range of reasonable professional assistance" which "might be considered sound trial strategy" under the circumstances. *Id.* at 689 (citation omitted). A "doubly deferential" standard applies when "a federal court reviews a state court's *Strickland* determination" on habeas review. *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010). The state court "must be granted a deference and latitude that are not in

operation when the case involves review under the *Strickland* standard itself." *Richter*, 562 U.S. at 101.

> A.  Counsel's Stipulation to Admission of a Medical Record

In Claim a, subpart 3, Petitioner contends that counsel was ineffective by stipulating to the admission of a two-page medical report prepared by Dr. Scott Halbert, a physician who examined RC after she was referred "for evaluation of possible child sexual abuse." Resp't Ex. 123 at 1 (filed under seal). In his report, Dr. Halpert recounted that he asked RC if she had been touched in a way she did not like, and she responded, "No." *Id.* Dr. Halpert then asked RC if she had ever touched anyone, and she responded, "Yes, D." *Id.* RC refused to answer any further questions about "where she touched and what happened." *Id.* Dr. Halpert found no abnormalities with RC's physical examination and noted a "[h]istory of child sexual abuse with normal physical exam" in the "Assessment" portion of his repot.  Resp't Ex. 123 at 2. Counsel stipulated to the admission of Dr. Halpert's report, telling the trial court that "we're not demanding foundation for that exhibit." Transcript of Proceedings (Tr.) at 6.[1]

Petitioner argues that reasonable trial counsel would have objected to Dr. Halpert's report on grounds that it lacked the requisite foundation to support a diagnosis of sexual abuse pursuant to *State v. Southard*, 347 Or. 127 (2009), a case pending before the Oregon Supreme Court at the time of Petitioner's trial. In *Southard*, the Oregon Supreme Court ultimately held that a medical diagnosis of sexual abuse was inadmissible unless supported by physical evidence of abuse, because such a diagnosis poses "the risk that the jury will not make its own credibility determination, which it is fully capable of doing, but will instead defer to the expert's implicit conclusion that the victim's reports of abuse are credible." *Southard*, 347 Or. at 141. Even though

---

[1] Citations to transcript pages refer to the page numbers in the bottom right hand corner.

Page 5     - OPINION AND ORDER

Petitioner's counsel did not have the benefit of *Southard*, Petitioner contends that its outcome was consistent with then-existing caselaw and competent counsel would have challenged the foundation of Dr. Halpert's "assessment" in anticipation of the *Southard* decision.

The PCR court denied this claim, finding that counsel made a "valid strategic decision" to stipulate to the report's admissibility. Resp't Ex. 145 at 44-45. The PCR court's ruling is amply supported by the record. First, Dr. Halpert did not render a diagnosis of sexual abuse in his report and gave no opinion on whether RC was sexually abused; rather, Dr. Halpert simply recounted what RC told him and noted her stated "history" of abuse. Resp't Ex. 123. Thus, it is unlikely that an objection based on lack of foundation would have been sustained. Second, as the PCR court emphasized, counsel's stipulation prevented Dr. Halpert from testifying and perhaps offering more damaging testimony. Resp't Ex. 145 at 44. Finally, Dr. Halpert's report did not identify Petitioner as RC's sexual abuser, and the prosecutor did not rely on the report aside from noting RC's disclosure to Dr. Halpert. Tr. at 208-09.

Given this record, the PCR court reasonably found no deficiency and no prejudice arising from counsel's stipulation.

B.  Counsel's Failure to Object to Rebuttal Testimony

In Claim a, subpart 4, Petitioner alleges that counsel was ineffective by failing to object to the rebuttal testimony of Detective Martin, a detective who interviewed Petitioner after RC disclosed the abuse to her mother.

Petitioner took the stand in his defense and, on cross-examination, the prosecutor questioned him about his interview with Detective Martin. The prosecutor implied that Petitioner asked Detective Martin about potential penalties for sexual abuse after being told of RC's disclosure, and Petitioner responded:

Page 6    - OPINION AND ORDER

> Okay. Well, [Detective Martin] asked me if I knew what the penalties for that were, and I said that I didn't. And he went on to ask me what I think they should be, and I said that, you know, I wouldn't judge. Then he changed the subject, and I asked him what they were, because he was telling me that, you know, I would never see my kids again.

Tr. at 166-67. The prosecutor later called Detective Martin as a rebuttal witness and asked whether he informed Petitioner of "the substance" of RC's allegations and what information Petitioner was given about those allegations. Tr. at 173. In response, Detective Martin testified that Petitioner was "not being honest with his testimony in regards to how [the] issue" of criminal penalties arose and maintained that it was Petitioner who "brought up the issue." Tr. at 173-74. Petitioner's counsel did not object to this testimony and Petitioner argues that counsel should have objected to Detective Martin's testimony as an improper and inadmissible comment on Petitioner's truthfulness.[2]

The PCR court rejected this claim and the Oregon Court of Appeals affirmed, finding that the PCR court "correctly concluded that the failure to object did not prejudice petitioner." *Pollock*, 307 Or. App. at 614; *see* Resp't Ex. 145 at 45-46.[3] The Court of Appeals explained that "testimony from a witness that has the effect of acknowledging that, if that witness's testimony is true, other witnesses must be lying, does not constitute 'true vouching,'" because "such testimony tends merely to underscore a conflict in testimony and does not tend to 'bolster or undermine' another witness's testimony." *Pollock*, 307 Or. App. at 614 (citation omitted). The Court of Appeals reasoned that Detective Martin's testimony "was, in effect, an acknowledgment that, if the

---

[2] Petitioner's counsel did object when Detective Martin began to testify about how he "felt" about RC's disclosures, and the objection was sustained and the testimony was stricken. Tr. 174.

[3] The Oregon Court of Appeals rejected Petitioner's remaining assignments of error without discussion. *See Pollock*, 307 Or. App. at 614.

Page 7    - OPINION AND ORDER

detective was telling the truth, then [Petitioner] was lying" and was "something the jury in all likelihood would have recognized on its own." *Id.* at 615. Petitioner fails to show that the Oregon Court of Appeals unreasonably applied *Strickland* when denying Petitioner's claim.

In context, Detective Martin's statement that Petitioner was "not being honest" simply indicated that Detective Martin had a different recollection of Petitioner's interview and did not imply that he thought Petitioner to be untruthful, generally. Further, because the Oregon Court of Appeals found that Detective Martin's testimony did not constitute vouching, any objection to the testimony would have likely been overruled. Finally, the jury heard Petitioner's testimony and his version of the interview and could assess his credibility against that of Detective Martin's.

Accordingly, the Oregon Court of Appeals reasonably found no prejudice arising from counsel's failure to object to Detective Martin's rebuttal testimony.

C.  Counsel's Failure to Present Impeachment Evidence

Finally, in subpart 5 of Claim a, Petitioner claims that counsel was ineffective by failing to impeach RC with evidence showing that her mother "cajoled" and "bribed" her to testify against Petitioner.

During her direct examination, RC was non-responsive to questioning and the prosecutor requested a recess. Tr. 23. According to Petitioner, his family members and friends purportedly witnessed RC's mother attempting to bribe RC into testifying against Petitioner by promising RC a dollhouse, a trip to the hair salon, or candy and ice cream. *See* Resp't Exs. 119-122. The PCR court found most of the statements offered by Petitioner's friends and family members to be inadmissible hearsay, and Petitioner did not challenge those rulings on appeal. Resp't Ex. 144.

The PCR court further found that the admissible evidence did not establish improper coaching or bribery, and this finding is supported by the record. Petitioner did not introduce what

testimony would have been elicited had counsel attempted to impeach RC, and the PCR court had no basis to find improper coaching of RC or deficient performance by counsel. Resp't Ex. 145 at 34, 42. Moreover, following the recess during which the alleged bribery occurred, RC did not accuse Petitioner or anyone else of sexually abusing her and testified only that she told the truth during her interview at Kids First Center. Tr. 26-31. In fact, RC continued to be unresponsive on the stand and twice stated that she did not "want to stay here." Tr. 24-25. Given RC's recalcitrance during direct examination, there was no substantive testimony to impeach and Petitioner fails to show that counsel's failure would have likely affected the outcome of trial.

Accordingly, Petitioner fails to show that the PCR court unreasonably rejected this claim and habeas relief is denied.

## CONCLUSION

The Amended Petition for Writ of Habeas Corpus (ECF No. 11) is DENIED. A Certificate of Appealability is DENIED on the basis that petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

DATED this 25th day of May, 2023.

/s/Ann Aiken
ANN AIKEN
United States District Judge